## GENERAL TIRE & RUBBER CO. v. NORTHERN TRUST CO. (two cases).
### Nos. 9437, 9438.

Circuit Court of Appeals, Seventh Circuit.
June 1, 1948.

Edward R. Adams, Robert W. Wales and William Simon, all of Chicago, Ill. (Miller, Gorham, Wescott & Adams, of Chicago, Ill., of counsel), for General Tire & Rubber Co.

Frederic A. Fischel and Max H. Weinberg, both of Chicago, Ill. (T. George Gilinsky, of Chicago, Ill., of counsel), for Northern Trust Co.

Before SPARKS, MAJOR and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a declaratory judgment in an action brought pursuant to Sec. 274d of the Judicial Code, 28 U.S.C.A. § 400, declaring the rights and liabilities of the plaintiff and defendant under a "new building" provision of a 198 year lease entered into by plaintiff's assignor as lessee and defendant's assignor as lessor on June 1, 1912. The lease is concerned with real estate on the near south side of Chicago, Illinois, and provides for a rental of $1,500 a year for the first 20 years and $2,500 a year thereafter. The lessee also agrees to pay the real estate taxes. In accordance with the lease, the lessee purchased from the lessor for $20,000 the buildings then on the property.

The property described in the lease fronts on three intersecting streets. It extends 111 feet on South Prairie Avenue (a north and south street), 49 feet on East 23rd Street (an east and west street), and 124 feet on Cottage Grove Avenue (a northwesterly and south-easterly street). The property is now used as an automobile service station. There is a service station building on the property, the rear of which is at the Prairie Avenue building line. The front of this building faces Cottage Grove Avenue. The proposed new building is 49'7" in width on 23rd Street, 20'7" in depth along Prairie Avenue, and 23' in depth along Cottage Grove Avenue.

The essential provision of the lease involved in this suit is Sec. 2, as follows:

"The lessee, as a further consideration of this lease and as further security for the rent hereunder covenanted and agreed up-

on, hereby agrees that he will remove and wreck the buildings now on said demised premises, and that he will erect, build and construct on said demised premises in a good and workmanlike manner a good and substantial brick, stone or cement building to cost not less than Twenty Thousand ($20,000) Dollars and which building shall be not less than three (3) stories in height, which building shall be fully completed and paid for by the lessee on or before May 1, 1942."

The old buildings which were on the property when the lease was executed and which were purchased by the lessee for $20,000 were wrecked and removed from the property in 1929. In the same year, plaintiff and the defendant entered into an agreement extending the time for construction of the new building until May 1, 1944. That agreement provided that plaintiff would deposit, and did deposit, with defendant $20,000 as security for the performance of the covenants of the lease and that the deposit could be used by plaintiff to pay for the construction of the new building. From time to time the parties have further extended the time for the construction of the new building. On August 9, 1944, plaintiff submitted plans by which it proposed to erect on the premises in a good and workmanlike manner a substantial brick building, three stories in height, at a cost of approximately $22,300. On September 9, 1944, defendant by a letter addressed to the plaintiff disapproved of the plans and specifications thus submitted.

The complaint prayed for a declaratory judgment that (a) the construction of a building in accordance with the plans and specifications tendered by the plaintiff to the defendant would constitute performance of the new building provision to the lease; (b) under the terms of the lease the new building is not required to cover all, or substantially all, of the leased premises; and (c) plaintiff is required only to build a good and substantial three story building of brick, stone or cement construction, built in a good and workmanlike manner and costing not less then $20,000.

The defendant by its answer substantially admitted the facts relied upon by the plaintiff but denied that the proposed new building would be in conformity with the provisions of the lease. It also filed a counter-claim alleging that a proper construction of the lease required that the new building cover all or substantially all of the property and prayed for a judgment to that effect.

The court below construed the lease as requiring a building that would produce income sufficient to secure the rental provided for in the lease without consideration of other income which the leasehold property as a whole was producing. The court rejected defendant's contention that the building must cover the entire property, and expressly found that the new building need not cover all or substantially all of the property. Plaintiff has appealed from that part of the judgment adverse to it, and defendant has cross-appealed from that part of the judgment adverse to it.

The contested issue is whether the plans for a new building submitted to defendant by plaintiff on August 9, 1944 complied with the building provision of the lease heretofore set forth.

Plaintiff argues that the defendant is estopped from contending that the plaintiff was required to construct a building that would produce a rental equal to the ground rent and taxes. We think there is merit in this contention. In defendant's letter of September 9, 1944, the plans and specifications for a new building which had been submitted by the plaintiff were specifically disapproved in the following statement: "The original structure which you removed some years ago covered substantially the entire premises, and there is little doubt in our minds that whatever new building is erected should also cover the entire premises." While other matters are discussed in the letter, nothing is said concerning any deficiency of income which the proposed building would produce as a reason for disapproving the plans.

Plaintiff in paragraph 17 of its complaint, after referring to the submitted plans and specifications for a new building which it proposed to erect alleged "that in and by said plans and specifications plaintiff proposed and agreed to erect, build and construct on the demised prem-

ises, in a good and workmanlike manner, a good and substantial brick building, three stories in height, at a cost of approximately Twenty-two Thousand Three Hundred Dollars ($22,300); * * * that plaintiff believes that a building erected in accordance with such plans and specifications would constitute a full and complete performance of the construction requirements of said lease * * *." Defendant in its answer admitted the allegations of this paragraph "except that portion thereof in which the Plaintiff alleges that a building to be erected in accordance with such plans and specifications * * * constitutes a full and complete performance of the construction requirements of said lease, which allegation Defendant specifically denies." While defendant denied that the plans and specifications submitted met the requirements of the lease, it did not base its denial upon the ground that the building proposed would not produce sufficient income to pay the rent provided by the lease and the taxes which plaintiff was obligated to pay. The answer does, however, specifically allege as a further defense that the lease calls for a building "covering all or substantially all of the demised premises."

Defendant in its counter-claim makes the same allegation but makes no assertion that the proposed building failed to comply with the terms of the lease because it would not produce sufficient income.

While we think, as stated, that there is merit in plaintiff's contention that defendant is estopped to raise the issue as to the income producing capacity of the proposed building, we need not, in the view which we take of the situation, place our decision upon this narrow ground. The facts above recited, however, bearing upon the issue of estoppel, show unmistakably that defendant's contention, even though supported by the lower court, that the proposed building in order to meet the requirements of the lease must be capable of producing an income which will secure the payment of interest and taxes, was an afterthought, and that the parties at least prior to trial had no such requirement in mind.

■ The court below interpreted the provision in controversy as requiring a building capable of producing income which will secure the payment of the rent. The language of the agreement, however, is that "the lessee, as a further consideration of this lease and as further security for the rent hereunder," which to us means what it says, that is, that it was contemplated that the building should be "further security" for the rent, in contrast to total or complete security. To construe this language as the defendant would have us do is to alter the provision in a manner that was not contemplated by the parties. If complete security for the rent was to be the criterion, it was meaningless to insert a provision that the building cost not less than $20,000. That this minimum requirement, however, as to cost was an important factor in the minds of the parties is shown in numerous ways. The lessee, as already noted, paid $20,000 for the buildings which were on the premises at the time the lease was executed; the lease obligates the lessee to carry fire insurance on the property in the amount of $20,000, and provides that in case the property is destroyed by fire and the lessee fails to erect a new building on the property the lessor may retain the $20,000 proceeds of the fire insurance as liquidated damages. Another section of the lease provides that if either the old buildings or the new building to be erected is destroyed by fire and the proceeds of the insurance thereon shall amount to "not less than $20,000," then the lessee shall erect a new building costing "not less than $20,000," and the insurance proceeds shall be paid out therefor, but that if the amount of the fire insurance proceeds are "less than $20,000," then the lessee is required to make up the difference between the amount of such insurance proceeds and a sum of "not less than $20,000." Also, the parties entered into an agreement on March 29, 1929, extending the lessee's time for the construction of a new building until May 1, 1944, in which plaintiff was required "as further security for the performance of the covenants of the lessee" to deposit with the defendant $20,-000, with a provision that said amount might be utilized by the lessee if and when it erects a new building on said premises.

It is hardly conceivable that the original parties to the lease or their assignees, the parties to the instant suit, could have conceived that the lessee was obligated to construct "a good and substantial brick, stone or cement building to cost not less than $20,000 and which building shall not be less than three stories in height," to cover all or substantially all of the premises described in the lease. In addition to the fact that the lease by its terms makes no such requirement, the facts and circumstances in proof leave no room for such a contention. When the lease was executed in 1912, a new three story brick, stone or cement building covering the entire leased premises would have cost $58,760. In 1929, when the parties entered into a supplemental contract extending the time of performance until May 1, 1944, at which time $20,000 was deposited with the lessor by the lessee as security for such performance, the building now contended for by the lessor would have cost $102,000. In 1944, when the lessee submitted plans for the new building, it would have cost $130,000, and, of course, at the time of the trial would have cost considerably more.

We think there is no basis for an interpretation of the building provision so as to make rental the standard by which to determine whether the building meets the requirements of the lease. Certainly the lease itself contains no such requirement and the facts and circumstances in proof dispel the idea that it was ever so intended by the parties. To so interpret the lease is to add a term which the parties omitted and which the facts and circumstances show they never intended. This a court should not do. The Decatur Lumber & Mfg. Co. v. Ed. S. Crail et al., 350 Ill. 319, 323, 183 N.E. 228; Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co., 334 Ill. 281, 290, 165 N.E. 793.

It is, therefore, our view that the plans submitted by plaintiff meet the requirements of the lease and that the lower court was in error in holding to the contrary. It follows that the court properly held that the provisions of the lease did not require a building covering all or substantially all of the demised premises.

The judgment is, therefore, affirmed in part and reversed in part, with directions that the judgment be vacated and that the cause proceed in accordance with the views herein expressed.